UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: : CASE NO. 26-51316-pmb
:

**David Anthony Brinagh, Sr.,**
**Raeshonda Marquice Brinagh**,

CHAPTER 7

:
Debtors. :
:
:

**NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer forComputershare Trust Company, N.A., not in its individual capacity but solely as Owner Trustee for NBE Asset Trust**, :
:
Movant, :
v. : CONTESTED MATTER

**David Anthony Brinagh, Sr.**,
**Debtor.**
**Raeshonda Marquice Brinagh**,
**Joint Debtor.**
**S. Gregory Hays**,
**Trustee.**
:
Respondents. :
:

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that ***NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Computershare Trust Company, N.A., not in its individual capacity but solely as Owner Trustee for NBE Asset Trust ("Movant")*** has filed a ***Motion for Relief from Stay (the "Motion")*** and related papers with the Court seeking an order ***granting relief from the automatic stay***.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the ***Motion*** at ***1:00 P. M.*** on ***November 16, 2026*** in Courtroom ***1202***, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to

consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

***If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.***

Dated: 10/15/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-51316-pmb |
| | : | |
| **David Anthony Brinagh, Sr.,**<br>**Raeshonda Marquice Brinagh**, | | CHAPTER 7 |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| **Computershare Trust Company, N.A., not in its individual capacity but solely as Owner Trustee for NBE Asset Trust**, | : | |
| | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| **David Anthony Brinagh, Sr.**,<br>**Debtor.**<br>**Raeshonda Marquice Brinagh**,<br>**Joint Debtor.**<br>**S. Gregory Hays**,<br>**Trustee.** | | |
| | : | |
| Respondents. | : | |
| | : | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW, NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Computershare Trust Company, N.A., not in its individual capacity but solely as Owner Trustee for NBE Asset Trust, (hereinafter referred to as “Movant”), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy

Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

David Anthony Brinagh, Sr. and Raeshonda Marquice Brinagh, (hereinafter referred to as “Debtors”, filed a joint petition for relief under Chapter 13 of the Bankruptcy Code on January 31, 2026. An order converting the case to a case under Chapter 7 was entered on June 12, 2026.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtors have an interest. Movant holds a security interest in the Debtors’ real property now or formerly known as **5260 Overbend Trail, Suwanee, Georgia 30024** (hereinafter referred to as “Property”) by virtue of a Security Deed dated January 22, 2018. Said Security Deed secures a Note in the original principal amount of $375,250.00. The promissory note has been duly endorsed. **NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for (Movant). In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.**

4.

Movant alleges that the Debtors are in default to Movant under the terms of the loan documents, having failed to make certain mortgage payments that have come due.

As of October 13, 2026, the arrearage owed to Movant is $70,750.82 and consists of November 1, 2024, through January 1, 2026, monthly mortgage payments at $2,098.59 each; February 1, 2026 through August 1, 2026 monthly mortgage payments at $4,342.33; September 1, 2026, through October 1, 2026, monthly mortgage payments at $4,437.83 each. An additional payment will come due November 1, 2026 and on the first day of each month thereafter until the loan is paid in full.

5.

As of October 13, 2026 the current unpaid principal balance due under the loan documents is approximately $440,454.68. The Property is most recently valued at $633.700.00 by the Gwinnett County Tax Assessor's Office.

6.

Movant's security interest in the Property is not adequately protected due to the Debtors' failure to maintain the mortgage payments.

7.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

8.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtors via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(4) be waived;

(d) That Movant be permitted to offer and provide Debtors with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtors.

(e) For such other and further relief the Court deems just and proper.

Date: 10/15/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112

Fax: 404-393-1425
Email: wismith@raslg.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 26-51316-pmb |
| | : | |
| **David Anthony Brinagh, Sr.,**<br>**Raeshonda Marquice Brinagh**, | | CHAPTER 7 |
| | : | |
| Debtors. | : | |
| ______________________________ | : | |
| | : | |
| **Computershare Trust Company, N.A., not in its individual capacity but solely as Owner Trustee for NBE Asset Trust**, | : | |
| | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| **David Anthony Brinagh, Sr.**,<br>**Debtor.**<br>**Raeshonda Marquice Brinagh**,<br>**Joint Debtor.**<br>**S. Gregory Hays**,<br>**Trustee.** | | |
| | : | |
| Respondents. | : | |
| ______________________________ | : | |

**<u>Certificate of Service</u>**

I hereby certify that on the ***15th*** day of ***October 2026***, I electronically filed the foregoing ***Motion for Relief from Stay and Notice of Hearing*** using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

***Allen M Bearden -Debtors' Counsel***
***S. Gregory Hays -Chapter 7 Trustee***

I further certify that on this day I caused a copy of this document to be served via ***United States First Class Mail,*** on the following parties at the address shown for each.

*David Anthony Brinagh, Sr.*
*5260 Overbend Trl*
*Suwanee, GA 30024-1782*

*Raeshonda Marquice Brinagh*
*5260 Overbend Trl*
*Suwanee, GA 30024-1782*

*Office of the United States Trustee*
*362 Richard B. Russell Building*
*75 Ted Turner Drive, SW*
*Atlanta, GA 30303*

Dated: 10/15/2026

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

/s/ Willie B. Smith_
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd.,Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

# SUPPORTING DOCUMENTS

# NOTE

MIN: [redacted] Loan Number: [redacted]

JANUARY 22, 2018 ATLANTA GEORGIA
[Date] [City] [State]

5260 Overbend Trail, Suwanee, Georgia 30024

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 375,250.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CBC NATIONAL BANK, A FEDERALLY CHARTERED NATIONAL BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on MARCH 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2048, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1887 S 14TH STREET, FERNANDINA BEACH, FLORIDA 32034-3033 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,985.85.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____________________ (Seal)<br>Raeshonda M. Brinagh -Borrower | _____________________ (Seal)<br>-Borrower |
| _____________________ (Seal)<br>-Borrower | _____________________ (Seal)<br>-Borrower |
| _____________________ (Seal)<br>-Borrower | _____________________ (Seal)<br>-Borrower |

Loan Originator: Victor Nassar, NMLSR ID [redacted]
Loan Originator Organization: Waterside Mortgage, Inc, NMLSR ID
[redacted]
Loan Originator Organization: CBC National Bank, NMLSR ID [redacted]

*[Sign Original Only]*

# ALLONGE TO NOTE

This Allonge to Note is to that certain Note dated JANUARY 22, 2018 and executed by Raeshonda M. Brinagh

PAY TO THE ORDER OF

Wells Fargo Bank, NA

WITHOUT RECOURSE
CBC NATIONAL BANK
A Federally Chartered National Bank

Ryan Talley
*Bank Officer*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY____________________
DAVID C. PETERSON, SENIOR VICE PRESIDENT
016

Loan No.: [redacted]

Loan Amount: $375,250.00

Property Address: 5260 Overbend Trail
Suwanee, Georgia 30024

BK 55681 PG 0664

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

18 FEB -1 PM 2:00

RICHARD ALEXANDER, CLERK

After Recording Return To:
CBC NATIONAL BANK
3010 ROYAL BOULEVARD SOUTH STE 230
ALPHARETTA, GEORGIA 30022
Loan Number: [redacted]

GEORGIA INTANGIBLE TAX PAID
$ 1126.50
RICHARD T. ALEXANDER, JR.
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

OHLSON & MEDLOCK LLC
6335 Amherst Ct
Peachtree Corners, GA 30092
770-814-8828

[redacted]

[Space Above This Line For Recording Data]

# SECURITY DEED

**MIN:** [redacted] **MERS Phone: 888-679-6377**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JANUARY 22, 2018, together with all Riders to this document.

**(B) "Borrower"** is Raeshonda M. Brinagh a married woman.

Borrower is the grantor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is CBC NATIONAL BANK.

Lender is a FEDERALLY CHARTERED NATIONAL BANK organized and existing under the laws of FLORIDA. Lender's address is 3010 ROYAL BOULEVARD SOUTH STE 230, ALPHARETTA, GEORGIA 30022.

**(E) "Note"** means the promissory note signed by Borrower and dated JANUARY 22, 2018. The Note states that Borrower owes Lender THREE HUNDRED SEVENTY-FIVE THOUSAND TWO HUNDRED FIFTY AND 00/100 Dollars (U.S. $ 375,250.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 1, 2048.



0009464

50

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [X] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [X] Other(s) [specify] Acknowledgment Waiver Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the COUNTY of Gwinnett :
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.
A.P.N.: [redacted]

which currently has the address of 5260 Overbend Trail
[Street]

Suwanee, Georgia 30024 ("Property Address"):
[City] [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of

time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds,

Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires,

Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate

as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's

address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will

state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate**

**payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.**

**If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

BK 55681 PG 0676

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

Unofficial Witness

Raeshonda M. Brinagh (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

Notary Public, DeKalb County

CRAIG SPERR
NOTARY PUBLIC
MY COMMISSION EXPIRES MARCH 4, 2018
DEKALB COUNTY, GEORGIA

Loan Originator: Victor Nassar, NMLSR ID [redacted]
Loan Originator Organization: Waterside Mortgage, Inc, NMLSR ID [redacted]
Loan Originator Organization: CBC National Bank, NMLSR ID [redacted]

BK 55681 PG 0677

EXHIBIT A

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 310 OF THE 7TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 19, BLOCK C OF ROYAL OAKS ESTATES SUBDIVISION, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 48, PAGE 143, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

**Parcel Number** [redacted]

[redacted] 5260 Overbend Trail, Suwanee, GA 30024

BK 55681 PG 0678

Loan Number [redacted]

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 22nd day of JANUARY, 2018, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to CBC NATIONAL BANK, A FEDERALLY CHARTERED NATIONAL BANK
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

5260 Overbend Trail, Suwanee, Georgia 30024
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in
COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

Royal Oaks
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and

which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

(Seal)
Raeshonda M. Brinagh -Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

BK55681 PG0681

Loan Number [redacted]

# ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 22nd day of JANUARY, 2018, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to
CBC NATIONAL BANK, A FEDERALLY CHARTERED NATIONAL BANK

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5260 Overbend Trail, Suwanee, Georgia 30024

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

BK 55681 PG 0682

READ AND AGREED BY GRANTOR:

[Space Below This Line For Acknowledgment]

Signed, sealed and delivered on this 22nd day of January, 2018 in the presence of:

Unofficial Witness

Notary Public, State of Georgia

Printed Name:

My commission expires:

CRAIG SPERR NOTARY PUBLIC DEKALB COUNTY, GEORGIA COMMISSION EXPIRES MARCH 4, 2018

Raeshonda M. Brinagh (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

# GEORGIA FORECLOSURE DISCLOSURE

**O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.**

By signing below, you acknowledge receipt of this Disclosure.

_________________________________ **(Seal)**
**Borrower**

_________________________________ **(Seal)**
**Co-Borrower**

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this 22nd day of January, 2018.

Notary Public

Closing Attorney

Michael Joseph Medlock
Notary Public
My Commission Expires November 19, 2019
Fulton County, Georgia

# Final Documentation Transmittal

**Form 5**

WELLS FARGO

| Wells Fargo 10-digit Loan number *(Column A of the DPD report)* | Borrower's Last Name/First |
|---|---|
| [redacted] | BRINAGH, RAESHONDA |

**One Form 5 required per final document.**

To complete the above captioned Loan, we hereby submit and enclose the following document in accordance with the policies outlined in Seller Guide **Section 565: *Final Documentation Delivery***.

- ☑ Recorded 1st Mortgage/Deed of Trus[redacted]
- ☐ Recorded Modification Agreement[redacted]
- ☐ Recorded Assignment of Mortgage/Deed of Trust[redacted]
- ☐ Title Polic[redacted]
- ☐ Attorney's Certificate of Title/ Attorney's Opinion (Iowa[redacted]
- ☐ Additional Title Policy Endorsement (if endorsement is separate from policy) ([redacted]
- ☐ Recorded CEMA[redacted]
- ☐ Recorded 2nd Mortgage/New Money Mortgage/Gap Mortgage (NY) [redacted]
- ☐ Recorded UCC1 [redacted]
- ☐ Recorded UCC3 [redacted]
- ☐ Recorded Manufactured Housing Affidavit of Affixation[redacted]
- ☐ Recorded Manufactured Housing Power of Attorne[redacted]
- ☐ Recorded Manufactured Housing Rider *if separate from mortgag*[redacted]
- ☐ Recorded Manufactured Housing Conversion / Surrende[redacted]
- ☐ Other

Completed by: Wendy Liddy  Phone #: 678-987-9862

Email Address: wendy.liddy@cbcnationalbank.com  Date: ____________

Company name: CBC National Bank

Final Documents listed above must be sent to the following address:

Wells Fargo Home Mortgage
Attn: Final Document Services
6200 Park Ave.
MAC#: F0012-01B
Des Moines, IA 50321

**Please note:** The address listed above is for delivery of Final Documents only. Do not send Closing Packages to this address.

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

**After recording return to:**
**SERVICELINK**
**LOAN MODIFICATION SOLUTIONS**
**320 COMMERCE, SUITE 100**
**IRVINE, CA 92602**

**Tax Parcel #** [redacted]

*[Space Above This Line For Recording Data]*

**Original Principal Amount $375,250.00**
**Unpaid Principal Amount $416,517.77** **Loan No: (scan barcode)**
**New Principal Amount $442,789.15**
**Total Taxable Amount $26,271.38**

**Intangible Tax: ______________**
**Doc Date: March 5, 2024**
**Maturity Date: March 1, 2064**

# Loan Modification Agreement

This Loan Modification Agreement ("Agreement") between **RAESHONDA M BRINAGH** ("Borrower" or "I" or "me" or "my"), whose address is **PO BOX 1093, SUWANEE, GA 30024**, and **WELLS FARGO BANK, N.A.** ("Lender"), whose address is **1 HOME CAMPUS, DES MOINES, IA 50328**, is effective **April 1, 2024**, and amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **January 22, 2018** and recorded **February 1, 2018** in Book or Liber, **55681** at page(s) **0664**, of the Official Records of **GWINNETT** County, **GEORGIA** and (2) the Note bearing the same date as and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at **5260 OVERBEND TRL, SUWANEE, GA 30024-1782**, the real property described being set forth as follows:

**Legal Description: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the agreements made in this Agreement, and other good and valuable consideration which the parties agree they have received, including, but not limited to avoiding foreclosure and its related costs, the Borrower and Lender agree to modify the terms of the Note and Security Instrument (the "Loan Documents") as set forth in this Agreement. The Borrower and the Lender also agree that the provisions of this Agreement supersede and replace any inconsistent provisions set forth in the Loan Documents and any prior modification, forbearance or other loss mitigation agreement.



[redacted]

TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

1. **BORROWER REPRESENTATIONS AND COVENANTS.** I certify and represent to Lender and otherwise agree and covenant with Lender that:

   a. **I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient readily available financial assets to make my monthly mortgage payments now or in the near future;**

   b. **There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;**

   c. **I have provided required documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify mortgage assistance);**

   d. **All documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for this modification, are true and correct;**

   e. **I have made or will make all payments required under a trial period plan and have complied with all other requirements of such trial period plan; and**

   f. **I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that my mortgage loan as modified by this Agreement is in first lien position and is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.**

2. **ACKNOWLEDGEMENTS AND PRECONDITIONS TO MODIFICATION.** I understand and acknowledge that:

   a. **If, prior to or as of the Modification Effective Date, the Lender determines that any of my certifications or representations set forth in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 has not been performed, the Loan Documents will not be modified and this Agreement, except for this paragraph No.2 is null and void and of no legal effect; and**

   b. **The Loan Documents will not be modified by this Agreement unless and until both (i) the Lender has accepted this Agreement as solely evidenced by Lender's signature on this Agreement or on a copy of this Agreement containing Lender's signature, and (ii) the Modification Effective Date has occurred and the Lender will not be obligated or bound to make any modification of the Loan Documents if any certification or representation set forth above in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 has not been performed.**



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

3. **CAPITALIZATION AMOUNT.** I acknowledge that interest has accrued but has not been paid and the Lender also has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Loan Documents and that such interest, costs and expenses, in the total amount of **$26,271.38**, have been added to the principal balance owed under the Note and secured by the Security Instrument.

4. **UNPAID PRINCIPAL BALANCE.** As of **April 1, 2024** the amount payable under the Loan Documents is U.S. **$442,789.15** (the "Unpaid Principal Balance"), consisting of the unpaid amount(s) loaned to me by Lender plus the Capitalization Amount set forth in paragraph No.3. I understand that by agreeing to add the Unpaid Amounts to the principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

5. **BORROWER'S PROMISE TO PAY.** I promise to pay the Unpaid Principal Balance plus interest charged in accordance with paragraph No.6 to the order of Lender in accordance with the payment schedule set forth in paragraph No.7.

6. **INTEREST.** Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.875%** beginning on **March 1, 2024**. The yearly rate of **4.875%** will remain in effect until principal and interest are paid in full.

7. **MONTHLY PAYMENTS AND DUE DATE.** I promise to make monthly payments of principal and interest as set forth in the schedule below until the principal and interest and any other amounts secured by the Security Instrument are paid in full. My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 4.875% | 03/01/2024 | $2,098.59 | $2,198.32, may adjust periodically | $4,296.91, may adjust periodically | 04/01/2024 | 480 |

***The monthly escrow payment amount may be adjusted periodically in accordance with applicable law and therefore I understand that my total monthly payment may change accordingly.**

****This includes an escrow shortage amount to be paid over the first 60 month term.**

8. **MATURITY DATE.** If on **March 1, 2064** (the "Maturity Date"), I still owe amounts under the Loan Documents, as amended by this Agreement, I will pay these amounts in full on the Maturity Date.

9. **TRANSFER OF THE PROPERTY OR BENEFICIAL INTEREST IN BORROWER.** As used



[redacted]

TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

in this paragraph No.9, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser or other third party.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed and, within such period, Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

10. **SECURITY INSTRUMENT.** I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Security Instrument, including without limitation, my covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No.4:

   a. all terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, adjustable, step or simple rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in paragraph No.10(a).

11. **ADDITIONAL AGREEMENTS.** I understand and agree that:

   a. **Escrow.** This Agreement constitutes Lender's notice that Lender's waiver as to the payment of Escrow Items as defined in the Security Instrument, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account for the payment of Escrow Items (e.g., taxes and insurance);

   b. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this paragraph No.11(a) I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph No.11(a).

c. **Default.** I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement; that all the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument also apply to default in the making of the payments due under this Agreement; and that I will be in default if, during the loss mitigation application process, I or any persons or entities acting at my direction or with my knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with my mortgage loan or application for mortgage assistance, such material representations include, but are not limited to, representations concerning my income, hardship, Property, and occupancy of the Property;

d. **Loan Documents Remain in Full Force and Effect Except as Modified.** All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as modified by this Agreement, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions of this Agreement, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender. The Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed;

e. **Debt is not Satisfied or Released.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents;

f. **Modification Costs and Expenses of Lender.** I agree that all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender;

g. **Assignment of Agreement.** I understand that I may not assign the Loan Documents or this Agreement to a buyer or transferee of the Property and, unless expressly agreed to by Lender in writing, such buyer or transferee will not be permitted to assume the Loan;

h. **Execution of Documents.** I agree to make and execute such other documents or papers as



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

may be necessary or required to consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this agreement and which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, and administrators, of the Borrower or the Borrower's estate. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under any of Lender's available modification programs. Borrower represents that all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a Borrower or co-borrower is deceased; (ii) the Borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing;

i. **Limited Power of Attorney/Correction Agreement.** I hereby grant Wells Fargo Home Mortgage, as lender, limited power of attorney to correct and initial all typographical or clerical errors or omissions discovered in the Modification Agreement. In the event this limited power of attorney is exercised, I will be notified and receive a copy of the corrected document. This limited power of attorney shall automatically terminate 180 days from the closing date of my Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Within 10 (ten) days, I agree to cooperate and execute any and all documents required by the lender as necessary to effectuate the terms and conditions of this Agreement.

j. **MERS.** Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. If my loan has been registered with MERS, I understand and agree that MERS has only legal title to the interests granted by the Borrower under the Loan Documents and this Agreement and MERS is acting solely as nominee for Lender and Lender's successors and assigns, and as such, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan;

k. **Lost or Destroyed Documents.** That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this paragraph No.11(k), shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement;

l. **Mortgage Insurance Premiums.** That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the Capitalization Amount which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Unpaid Principal Balance; and


[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

m. **Consent to Disclosure of Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this paragraph No.11(m), Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

n. If the home owners insurance should lapse, Wells Fargo Home Mortgage reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account the monthly payment could increase. All other terms of the modification Agreement will not be affected by the LPI and will remain in effect with accordance to this Agreement.

o. With this modification, I understand that my full contractual payment will be due each month. Any previous options to pay less, such as only the interest or an alternative minimum payment, will no longer be available.

p. Borrower must deliver to Wells Fargo Home Mortgage a properly signed modification agreement and all enclosed documents without alteration by **May 1, 2024**. If Borrower does not return a properly signed modification agreement and all enclosed documents by this date and make the first monthly payment pursuant to the terms of this modification agreement, Wells Fargo Home Mortgage may deny or cancel this modification agreement. If the Borrower returns a properly signed modification agreement by said date, payments pursuant to the modification agreement are due as outlined in this modification agreement. Wells Fargo Home Mortgage may deny or cancel this modification agreement if Borrower fails to make the first payment due pursuant to this modification agreement.

I consent to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

☐ By checking this box, Borrower also consents to being contacted by text messaging.

**By signing below, I certify I have read this Agreement in its entirety, that I know and understand the meaning and intent of this Agreement and that I enter into this Agreement knowingly and voluntarily. By signing below, I agree to all terms and conditions described on every page of this Agreement.**



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

Signed, sealed and delivered in the presence of:

Ashley Turner 04/25/2024
Witness Signature (Date)

Printed Name Ashley Turner

Raeshonda Brinagh (Seal) 04/25/2024
Borrower: **RAESHONDA M. BRINAGH** Date

Mailing Address: **PO BOX 1093, SUWANEE, GA 30024**

RB (Seal) ______________________
Borrower: Date

Mailing Address:

——— *[Space Below This Line For Acknowledgment in Accordance with Laws of Jurisdiction]* ———



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

## ACKNOWLEDGMENT

State of Georgia §
§
County of Gwinnett § April 25th, 2024

This record was acknowledged before me on David Brinagh by **RAESHONDA M. BRINAGH** who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____ Personally Known
or
X Produced Identification

Type and # of ID (last 4 digits) Ga Driver's License 0118

ID Expiration Date 05/16/2028

DAVID BRINAGH
MY COMMISSION EXPIRES
NOTARY
PUBLIC
JANUARY 31, 2028
GWINNETT COUNTY, GEORGIA

(Stamp/Seal)

[signature]
Signature of Notary Public

David Brinagh
(Name of Notary, Typed, Stamped or Printed)
Notary Public State of Georgia

My Commission Expires: 01/31/2028



[redacted]

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**WELLS FARGO BANK, N.A.**

By: ______________________________ -Lender

Griscelda Ruiz Espinosa
Vice President Loan Documentation

May 03, 2024
Date of Lender's Signature

Signed, sealed and delivered in the presence of:

______________________________ 5/3/2024
Witness Signature (Date)

Printed Name Jessica Gadea S.

**ACKNOWLEDGMENT**

State of Minnesota §
§
County of Ramsey §

This instrument was acknowledged before me on 05/03/2024 by

as Griscelda Ruiz Espinosa, Vice President Loan Documentation of **WELLS FARGO BANK, N.A.**.

______________________________
Signature of Notarial Officer

ASHLEY C ABBOTT
Printed Name

ASHLEY C ABBOTT
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2028

Notary Public
Title or Rank

Serial Number, if any: N/A

(Seal)

My Commission Expires: 01/31/2028



[redacted]

THIS IS A TRUE AND CORRECT COPY CERTIFIED BY WELLS FARGO BANK NA

EXHIBIT A

BORROWER(S): RAESHONDA M BRINAGH

LOAN NUMBER: (scan barcode)

LEGAL DESCRIPTION:

STATE OF GEORGIA, COUNTY OF GWINNETT, AND DESCRIBED AS FOLLOWS:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 310 OF THE 7TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 19, BLOCK C OF ROYAL OAKS ESTATES SUBDIVISION, UNIT II, AS PER PLAT RECORDED IN PLAT BOOK 48, PAGE 143, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF.

Parcel ID Numb[redacted]
ALSO KNOWN AS: 5260 OVERBEND TRL, SUWANEE, GA 30024-1782


[redacted]

DEED B: 58365 P: 00161
02/09/2021 01:02:42 PM Pgs: 2 Fees: $ 25.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, Georgia

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9408-05E PO BOX 1629, MINNEAPOLIS, MN 55440-1629

[redacted]

**CORPORATE ASSIGNMENT OF SECURITY DEED**

Gwinnett, Georgia
"BRINAGH"

**MIN #** [redacted]

**PREPARED BY: WELLS FARGO BANK, N.A.**

Date of Assignment: February 4th, 2021
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI 48501-2026
Assignee: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: RAESHONDA M. BRINAGH A MARRIED WOMAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed: 01/22/2018 Recorded: 02/01/2018 in Book/Reel/Liber: 55681 Page/Folio: 0664 In the County of Gwinnett, State of Georgia.

Property Address: 5260 OVERBEND TRAIL, SUWANEE, GA 30024

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $375,250.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS
On 2-4-2021

By: [signature]
Joellyn Marie Ackerman,
Assistant Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS
[signature]
Michelle Erin Wihren

[redacted]

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2
NOTARY WITNESS

STATE OF Minnesota
COUNTY OF Hennepin

Subscribed and sworn to (or affirmed) before me on 02/04/2021, by Joellyn Marie Ackerman, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me..

WITNESS my hand and official seal,

Suzanne T Pierson
Suzanne T Pierson
Notary Expires 01/31/2025

SUZANNE T PIERSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2025

(This area for notarial seal)

[redacted]

DEED B: 61407 P: 00462
09/10/2024 08:01 AM Pgs: 2 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: [redacted]

Recording Requested By: WELLS FARGO BANK, N.A.
When Recorded Return To: ASSIGNMENT TEAM, WELLS FARGO BANK, N.A. MAC: N9408-05C PO BOX 1629, MINNEAPOLIS, MN 55440-1269

[redacted]

**CORPORATE ASSIGNMENT OF SECURITY DEED**

Gwinnett, Georgia
"BRINAGH"

**PREPARED BY: WELLS FARGO BANK, N.A.**

Date of Assignment: September 3rd, 2024
Assignor: WELLS FARGO BANK, N.A. at 1 HOME CAMPUS, DES MOINES, IA 50328
Assignee: NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING at 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034

Executed By: RAESHONDA M. BRINAGH A MARRIED WOMAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS
Date of Security Deed: 01/22/2018 Recorded: 02/01/2018 In Book/Reel/Liber: 55681 Page/Folio: 0664 In the County of Gwinnett, State of Georgia.

Property Address: 5260 OVERBEND TRAIL, SUWANEE, GA 30024

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Security Deed having an original principal sum of $375,250.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Security Deed.

TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject to the terms contained in said Security Deed.

WELLS FARGO BANK, N.A.
On 9/4/2024

By: ______________________
Xee Vang
Vice President Loan Documentation

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS
______________________
Meng Vang

[redacted]

eRecorded

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2
NOTARY WITNESS

STATE OF Minnesota
COUNTY OF Hennepin

Subscribed and sworn to (or affirmed) before me on 09/04/2024, by Xee Vang, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

JAKE DYLAN RONNENG
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2028

Jake Dylan Ronneng
Notary Expires: 01/31/2028

(This area for notarial seal)

[redacted]

eRecorded

**DEED B: 62720 P: 00748**
**08/25/2026 11:08 AM Pgs: 2 Fees: $25.00**

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED

Prepared By and Return To:

Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

Space above for Recorder's use [redacted]

## ASSIGNMENT OF SECURITY DEED

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,** whose address is **75 BEATTIE PLACE, SUITE 300, GREENVILLE, SC 29601,** (ASSIGNOR), does hereby grant, assign and transfer to **COMPUTERSHARE TRUST COMPANY, N.A., NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR NBE ASSET TRUST,** whose address is **9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain Security Deed, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Security Deed: **1/22/2018**
Original Loan Amount: **$375,250.00**
Executed by (Borrower(s)): **RAESHONDA M. BRINAGH**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR CBC NATIONAL BANK, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book **55681**, Page **0664**
Document/Instrument No: **0009464** in the Recording District of **Gwinnett, GA**, Recorded on **2/1/2018**.

Property more commonly described as: **5260 OVERBEND TRAIL, SUWANEE, GEORGIA 30024**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **08/18/2026**

**NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

By: **JANALYNNE HEDDEN**
Title: **VICE PRESIDENT**

Witness Name: Christina Van Waters

Witness Name: Jennifer Korn

[redacted]

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **SOUTH CAROLINA**
County of **GREENVILLE**

On **08/18/2026**, before me, Jennifer Smith, a Notary Public, personally appeared **JANALYNNE HEDDEN, VICE PRESIDENT** of/for **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **SOUTH CAROLINA** that the foregoing paragraph is true and correct. I further certify **JANALYNNE HEDDEN** signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): Jennifer Smith
My commission expires AUG 10 2030

JENNIFER SMITH
NOTARY PUBLIC
COMM. EXP. 08-10-2030
SOUTH CAROLINA

[redacted]

PT-306 (Revised April 2026)

**GWINNETT COUNTY BOARD OF ASSESSORS**
**CHIEF APPRAISER, STEWART OLIVER**
**REAL PROPERTY DIVISION**
**75 Langley Drive**
**Lawrenceville, GA 30046-6935**
**770.822.7200**

# 2026 Notice of Assessment

## Date Notice Mailed:

5/15/2026

## Appeal Deadline:

6/29/2026

Appeals, homestead applications, or other specialized assessment applications must be filed within 45 days from the Date Notice Mailed

*****You are required by law to notify Tax Commissioner, Denise Mitchell if you become ineligible for any homestead exemption listed in this notice and subject to penalties for failing to do so.*****

RAESHONDA M BRINAGH
5260 OVERBEND TRL
SUWANEE, GA 30024-1782

**LAST KNOWN ADDRESS OF JANUARY 1ST OWNER**

## RIGHTS TO APPEAL AND APPLY FOR HOMESTEAD EXEMPTION

You have the right to appeal the property values provided in this notice. You may also apply for homestead exemptions if your property was owned and occupied as your family's primary residence and homestead as of January 1 of 2026. If you wish to appeal your 2026 property value or apply for homestead exemptions, you must do so in writing no later than 45 days after the date of this notice. If you do not file an appeal or apply for homestead exemption by this date, your right to do so for this year will be lost.

For further information on filing appeals, visit or contact the Assessors' Office at Gwinnett-Assessor.com, by calling 770.822.7200 and requesting the Residential Property, Commercial Property, or Personal Property Division, or emailing PropertyServices@GwinnettCounty.com. For further information on applying for homestead exemptions, or reporting your ineligibility for a homestead exemption, visit or contact the Gwinnett County Tax Commissioner's Office at GwinnettTaxCommissioner.com, by calling 770.822.8800, or emailing Tax@GwinnettCounty.com. Both the Assessors' Office and Tax Commissioner are located at 75 Langley Drive, Lawrenceville, GA.

**Board of Equalization**: Appealing value, uniformity, exemptions, or taxability.

**Nonbinding Arbitration**: Appealing value only. Requires a certified appraisal.

**Hearing Officer**: Appealing value or uniformity. For a parcel of non-homestead real property with a fair market value of more than $500,000; one or more accounts of wireless personal property with an aggregate fair market value of more than $500,000; or one or more accounts of personal property other than wireless property with an aggregate fair market value of more than $200,000.

**Superior Court**: Requires a written agreement with the county board of tax assessors.

**To file an appeal with the Gwinnett County Board of Tax Assessors or for more information regarding reasons for any assessment change or the appeals process, contact Keith Everett (Residential) and Kelly Parrish (Commercial) at 770.822.7200 or Trinidad Desamour (Personal Property) at 770.822.7220. All documents and records used to determine the 2026 Value are available upon request from the Gwinnett County Board of Tax Assessors and must be provided within 10 business days of such request.**

| Account Number | Property Identification Number | Total Acreage | Tax District |
|---|---|---|---|
| [redacted] | | 0.59 | COUNTY Unincorporated |
| **Property Description** | L19 BC ROYAL OAKS EST 2 | | |
| **Physical Property Address** | 5260 OVERBEND TRL, SUWANEE 30024 | | |
| | **2025 Value** | **2026 Value** | **2026 Other Value *** |
| **100% Fair Market Value** | 685,300 | 633,700 | 0 |

**Please note:** Tax rates for counties, school districts, and cities will be established by each local government later this year. If a local government intends to increase revenue on existing properties, they must advertise and hold three public meetings to do so.

* 2026 Other Value reflects the fair market value of any preferential assessment for properties or any portion of properties meeting certain requirements.

## TAXABLE ASSESSED VALUE CHANGES SINCE 2025

Adjusted for Market Conditions

## 2026 EXEMPTIONS, CREDITS, AND PREFERENTIAL ASSESSMENTS **

| | |
|---|---|
| | $0.00 |
| | **Estimated Tax Savings** |

** The estimated tax savings under the 2026 Exemptions, Credits, and Preferential Assessments is determined by totaling the dollar value of any exemptions, credits, or preferential assessments applied to your property for 2026 using the 2025 millage rates for taxing authorities and types. All 2026 exemptions, credits, or preferential assessments listed include all taxing authorities, and such estimate may not reflect the total savings provided on the 2026 tax bill.

[redacted]

This notice requires no action if you agree with it. If you disagree with the value on the notice, or applied for a homestead exemption or special assessment and believe you were improperly denied you may file an appeal by the deadline shown in the top-right corner of this notice. There is no cost to file an appeal directly with the Gwinnett County Assessors' Office, and you may do so in person, online, or by mail. Each year, property owners are solicited by companies that charge a fee to appeal the Annual Notice of Assessment. These companies have no affiliation with the County. Contact us directly if you are unsure how to file an appeal at no cost. Filing online at www.Gwinnett-Assessor.com is the best way to ensure we receive your appeal before the deadline. Scan the QR code for additional information.